UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FRIMPONG AMPADU,
    *Plaintiff*,

v.

CAPITAL ONE,
    *Defendant*.

No. 3:21-cv-828 (JAM)

**ORDER GRANTING UNOPPOSED MOTION TO DISMISS**

Plaintiff Frimpong Ampadu has filed a *pro se* complaint alleging that defendant Capital One violated multiple federal laws in connection with two of Ampadu's credit card accounts.[1] Capital One has now moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Ampadu has not filed any objection or other response to the motion to dismiss. Because the complaint fails to allege facts that give rise to plausible grounds for relief, I will grant the motion to dismiss.

### BACKGROUND

On July 6, 2020, Ampadu used an online application to open a credit card account ending in 7054 with Capital One.[2] As of November 3, 2020, Ampadu held a zero balance on his credit card after making payments totaling $2,221.11.[3] It is not clear from the complaint when Ampadu accrued his debt, but he sent a letter on December 23, 2020 to Capital One demanding a "Validation of Debt" and asking Capital One to "cease and desist" all debt collection communications with him.[4] Ampadu alleges that he took these actions after "noticing that

---

[1] The complaint names "Capital One" as the sole defendant. In its motion to dismiss, the defendant clarifies that its correct name is Capital One Bank (USA), N.A.
[2] Doc. #1 at 16.
[3] *Id.* at 12–13.
[4] *See id.* at 10–11. A separate "Notice and Demand" letter sent by Ampadu to Capital One on April 5, 2021, states both that the "Validation of Debt" demand was made on December 23, 2020 and that the original "Cease and Desist" letter was sent on December 23, 2021. *Ibid*. From the context of the letter and the fact that Ampadu filed this action six months *before* December 2021, I take it as true that the original Validation of Debt and Cease and Desist

1

fraudulent means [were] being employed to collect on" his credit card debt.[5] At some point prior to February 2021, Ampadu also filed a complaint against Capital One with the Consumer Financial Protection Bureau.[6]

On or about January 1, 2021, Capital One sent Ampadu a pre-approval offer for yet another credit card.[7] Ampadu applied for and received a new credit card ending in 1556.[8]

On January 22, 2021, Capital One informed Ampadu that it was closing both of his credit card accounts due to activity on the accounts that was "not consistent with [Capital One's] expectations for account use and violations of the Capital One Customer Agreement."[9] Ampadu alleges "on information and belief" that the accounts were closed out of retaliation against him for having demanded validation of his debt.[10]

As of April 2021, Ampadu owed balances of $1,270.19 on his card ending in 7054 and $136.20 on his card ending in 1556.[11] Notwithstanding Ampadu's cease-and-desist notice, Capital One continued to contact him,[12] even allegedly using "profane and obscene language" in an attempt to collect on his debts.[13]

---

demands were both made on December 23, 2020.
[5] *Ibid*.
[6] *Id.* at 15–16.
[7] *Id.* at 20.
[8] *Ibid*.
[9] *Id.* at 20–22.
[10] *Id.* at 4, 20.
[11] *Id.* at 18–19.
[12] The complaint contains contradictory allegations regarding whether Capital One continued to send debt collection communications after Ampadu's cease-and-desist demand. He alleges that Capital one contacted him "in an attempt to collect the alleged debt *after* [it] has put on the record that [it] will not contact [Ampadu] in an attempt to collect debt," *id.* a 23 (emphasis added), but elsewhere in the complaint he alleges that Capital One "complied with the Cease and Desist demand," *id.* at 15. I take it as true for the purposes of this ruling that Capital One continued to contact Ampadu in an effort to collect debt even after he made his cease-and-desist demand.
[13] *Id.* at 23. The two documents which Ampadu alleges "prove[]" Capital One's use of obscene and profane language do not appear to contain any evidence of inappropriate language. *See id.* at 7, 23, 21–22.

In addition, Capital One reported Ampadu's delinquencies to credit reporting agencies in order to "coerce payment thereby damaging [Ampadu's] credit and reputation."[14] As a result, Ampadu claims that Capital One should "ZERO out the balance on [his] account[s], report PAID in FULL with GOOD STANDING. And refund all payments collected on this account by fraudulent means."[15]

On June 17, 2021, Ampadu filed this federal civil action.[16] His *pro se* complaint alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. 1691 *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. Capital One now moves to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[17] Ampadu has not responded to the motion to dismiss.[18]

## DISCUSSION

The standard that governs a motion to dismiss under Rule 12(b)(6) is well established. A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain a plaintiff's claims for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018). A court must "accept as true all factual allegations and draw from them all reasonable inferences; but [it is] not required to credit conclusory allegations

---

[14] *Id.* at 23–25.
[15] *Id.* at 11–12.
[16] *See generally id*.
[17] Doc. #9.
[18] Since filing its motion to dismiss, Capital One represents that it has attempted to contact Ampadu for the purposes of conducting a Rule 26(f) scheduling conference. Despite its best efforts, Capital One was unable to reach Ampadu. *See* Doc. #13 at 1.

3

or legal conclusions couched as factual allegations." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019).[19]

Because Ampadu is proceeding *pro se*, his allegations "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Nevertheless, dismissal of a *pro se* complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In addition, this Court's local rules provide that "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion." D. Conn. L. Civ. R. 7(a)(2).

### *Fair Debt Collection Practices Act (FDCPA)*

Ampadu principally complains that Capital One is "fraudulently holding" his money and using deceptive and unfair debt collection practices, including the use of obscene and profane language, in violation of the FDCPA.[20] It is well recognized, however, that the protections of the FDCPA apply only to communications from a "debt collector." *See Allen v. United Student Aid Funds, Inc.*, 2018 WL 4680023 at *4 (S.D.N.Y. 2018) (citing *Feldman v. Sanders Legal Grp.*, 914 F. Supp. 2d 595, 599 (S.D.N.Y. 2012)).

The FDCPA defines the term "debt collector" in relevant part as one "who regularly collects ... debts owed ... another" or who is involved "in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6). Generally, as the Supreme Court has

---

[19] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[20] Doc. #1 at 4, 7.

4

explained, "you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector" under the FDCPA. *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1724 (2017).

By contrast, the FDCPA separately defines a "creditor" in relevant part to mean one "who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). Thus, a "creditor" includes one who originated or otherwise created a debt, as distinct from a "debt collector" who seeks to collect a debt that was created or originated with another party. The Second Circuit in turn has made clear the "general rule" that "creditors are not subject to the FDCPA," unless they use a name other than their own to create an impression that they are a third party seeking to collect the creditor's debts. *Vincent v. The Money Store*, 736 F.3d 88, 97 (2d Cir. 2013) (citing *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998)).

It appears from the complaint that Capital One is a "creditor" rather than a "debt collector," because the debt at issue originated with Capital One as the credit card company for Ampadu. The complaint does not allege that Capital One used any other name to create an impression that it was collecting the debts of someone else. In similar contexts, other courts have ruled that Capital One is not a "debt collector" subject to the FDCPA. *See Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1317-18 (11th Cir. 2015); *Cooper v. Pressler & Pressler, LLP*, 912 F. Supp. 2d 178, 184–86 (D.N.J. 2012). Accordingly, I will grant Capital One's motion to dismiss any claims under the FDCPA.

### *Equal Credit Opportunity Act (ECOA)*

Ampadu seeks relief under the ECOA, which in relevant part makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction … because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. §

5

1691(a)(3). Ampadu claims that he sought to exercise his right under the FDCPA to have Capital One validate his debt, but that Capital One responded by closing his credit card accounts, thus retaliating against him for exercising his right to validation of his debt under the FDCPA.

The FDCPA imposes a duty on a "debt collector" to validate a debt upon request of the consumer. It states in relevant part that "a debt collector" will "send the consumer a written notice" with "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(a)(4). The FDCPA does not impose a corresponding obligation on a "creditor" to validate a consumer's debt. *See Thomas v. L. Firm of Simpson & Cybak*, 392 F.3d 914, 917 (7th Cir. 2004) (noting that "the FDCPA makes debt collectors, but not creditors, responsible for notifying debtors of their validation rights").

Here, as discussed above, the complaint does not plausibly allege that Capital One was a "debt collector"—rather than a "creditor"—within the meaning of the FDCPA. Therefore, I agree with Capital One that the complaint does not plausibly allege any retaliation by Capital One against Ampadu that is attributable to the exercise of any rights protected under the FDCPA. Accordingly, I will grant Capital One's motion to dismiss any claims under the ECOA.

### *Fair Credit Reporting Act (FCRA)*

Ampadu alleges that Capital One advertised his overdue balances on his credit report in violation of the FCRA. The Act "regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information." *Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 98 (2d Cir. 2020) (*per curiam*). Among the parties

regulated under the FCRA are consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies. *Ibid.*[21]

The complaint here alleges facts to suggest that Capital One acted as a furnisher of information to a credit reporting agency. As to duties of furnishers of information like Capital One, the FCRA imposes two sets of duties. *See* 15 U.S.C. § 1681s-2. The first set arises under § 1681s-2(a), principally requiring a furnisher to provide accurate information and to correct any information that is reported by a consumer to be inaccurate and confirmed to be inaccurate. *See* § 1681s-2(a)(1)(A)–(B), (2). Notwithstanding the imposition of these duties, "the FCRA does not provide a private cause of action for violations of Section 1681s-2(a)." *Sprague*, 969 F.3d at 98–99.

The second set of duties arises under § 1681s-2(b), principally concerning what a furnisher of information must do when a consumer reporting agency advises the furnisher of information that there is a dispute about the accuracy of the information that has been furnished. In essence, the furnisher must conduct an investigation of the reported inaccuracy, report the results of the investigation to the consumer reporting agency, and take remedial steps if the investigation determines that the information cannot be verified, is incomplete, or is inaccurate. *See* § 1681s-2(b)(1).

The FCRA allows for a private right of action against a furnisher of information who fails to comply with the duties imposed under § 1681s-2(b). *See Sprague*, 969 F.3d at 98–99. But, as the Second Circuit has made clear, the duties under § 1681s-2(b) are triggered only when a furnisher receives notice of a dispute from a consumer reporting agency, rather than directly

---

[21] A "consumer report" is "any written, oral, or other communication of any information . . . bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" which is used to determine credit eligibility, employment eligibility, or for certain other purposes. 15 U.S.C. § 1681a(d)(1).

from the consumer. *See id.* at 99. "Accordingly, Section 1681s-2(b) is not implicated simply because a consumer contacts a furnisher such as [the consumer's bank] regarding inaccuracies in her credit report." *Ibid*.

Here, the complaint does not allege facts to plausibly suggest that Capital One violated any of its duties under § 1681s-2(b). Indeed, it is unclear whether Ampadu even disputes the accuracy of any entries on his credit report. Rather than alleging that the debt was inaccurate, he appears to dispute the means by which Capital One sought to enforce the debt, accusing Capital One of "advertising the alleged debt in [his] consumer report to coerce payment" and "that fraudulent means [were] being employed to collect on [his account]."[22] In any event, to the extent that Ampadu disputes the accuracy of the debt, the complaint does not allege that any consumer reporting agency advised Capital One of the dispute as is required for liability under § 1681s-2(b). Accordingly, I will grant the motion to dismiss any claims under the FCRA.

### *Truth in Lending Act (TILA)*

Ampadu appears to allege that Capital One engaged in an unauthorized use of his credit card in violation of the Truth in Lending Act. Among its other provisions, the TILA "limits a cardholder's liability for the 'unauthorized use' of a credit card to $50." *Deutsch v. JPMorgan Chase & Co.*, 2019 WL 4805689 at *5 (S.D.N.Y. 2019) (citing 15 U.S.C. § 1643(a)(1)(B)). A consumer who has been charged for an unauthorized use may bring an action against their credit card company in order to limit their liability. *See, e.g.*, *Minskoff v. Am. Exp. Travel Related Servs. Co., Inc.*, 98 F.3d 703, 708 (2d Cir. 1996).

The term "unauthorized use" is defined to "mean[] a use of a credit card by a person other than the cardholder who does not have actual, implied, or apparent authority for such use

---

[22] Doc. #1 at 4, 10–11.

and from which the cardholder receives no benefit." 15 U.S.C. § 1602(p). The complaint does not allege facts to suggest that any third party engaged in an unauthorized use of Ampadu's credit card. Instead, the complaint alleges that "[t]he accounts that w[ere] closed by Capital One [are] still accumulating interest and fees to the benefit of Capital One and without benefit to [Ampadu]."[23] But even if Capital One continues to charge interest and fees to Ampadu's account, this does not suggest that Capital One itself has engaged in any "use" of the card, much less an "unauthorized use" as that term is defined under the Act. Accordingly, I will grant the motion to dismiss any claims under the TILA.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the motion to dismiss (Doc. #9). This dismissal is without prejudice to the filing of an amended complaint if Ampadu has good faith grounds to allege facts that overcome the concerns stated in this ruling. The Clerk of the Court shall close this case subject to re-opening in the event of the timely filing of an amended complaint within 30 days of this ruling.

It is so ordered.

Dated at New Haven this 21st day of June 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[23] *Id.* at 5.